In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00146-CV


______________________________




RUTH BARTLETT, Appellant



V.



ALEXANDER THERIOT, Appellee




 


On Appeal from the 76th Judicial District Court


Titus County, Texas


Trial Court No. 32,023




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Ruth Bartlett has filed her pro se notice of appeal from the trial court's judgment of
November 16, 2007. No clerk's record has been received by this Court.

 The district clerk of Titus County has now notified this Court that Bartlett's motion for new
trial was granted by the trial court on February 29, 2008, and this cause has been set for a jury trial.

 Because Bartlett's motion for new trial was granted, her appeal is now moot. See, e.g.,
Garcia-Udall v. Udall, 141 S.W.3d 323, 332 (Tex. App.--Dallas 2004, no pet.); Zapata v.
Rosenfeld, 811 S.W.2d 182, 183 (Tex. App.--Houston [1st Dist.] 1991, writ denied).

 Therefore, we dismiss the appeal.




 Bailey C. Moseley

 Justice


Date Submitted: March 31, 2008

Date Decided: April 1, 2008



 center">In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00107-CR
______________________________


STEVEN WAYNE QUICK, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 22,051


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION
            After a bench trial


 on a charge of kidnapping against Steven Wayne Quick, the trial court
found that, though the evidence did not show Quick had the specific intent to hide or hold two-year-old A. P. in a place where he was unlikely to be found—so Quick was not guilty of kidnapping; see
Tex. Pen. Code Ann. § 20.01(2) (Vernon Supp. 2004–2005) (defining "abduct," as used in Tex.
Pen. Code Ann. § 20.03 (Vernon 2003))—the evidence did show Quick was guilty of the lesser-included offense of unlawful restraint of A. P., a state jail felony. See Tex. Pen. Code Ann. §
20.02(a), (c)(1) (Vernon 2003) (state jail felony if victim younger than seventeen years).
            At the conclusion of a separate punishment trial, the trial court found "true" the indictment's
enhancement allegations and sentenced Quick to twenty years' imprisonment.


 Quick timely
appealed the trial court's judgment.
            Quick's appellate counsel filed an Anders


 brief with this Court in which he professionally
discussed the record, described the issues reviewed, and concluded there was no arguable ground for
appeal. As required by Anders, counsel also filed a motion to withdraw. Counsel also sent Quick
a copy of the appellate brief and informed Quick of his right to file a pro se response and of his right
to review the record. We informed Quick that his response, if any, to counsel's brief was due to be
filed by January 3, 2005. As of this date, we have not received a responsive pro se brief. Nor has
the State provided an independent evaluation of the case. See Tex. Code Crim. Proc. Ann. art. 2.01
(Vernon Supp. 2004–2005).
            We have independently reviewed the record and the brief filed by counsel in this appeal, and
we agree there are no arguable issues that would support an appeal in this case. Accordingly, we
affirm the trial court's judgment.
Factually and Legally Sufficient Evidence Supports the Finding of Guilt
            We begin our review of the case by determining whether the evidence is sufficient to support
Quick's conviction for unlawful restraint. In reviewing the legal sufficiency of the evidence, we view
the relevant evidence in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review, we view
all the evidence in a neutral light and determine whether the fact-finder was rationally justified in
finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App.
2004).
            The indictment charged Quick with kidnapping. See Tex. Pen. Code Ann. § 20.03. The
offense of "unlawful restraint" is a lesser-included offense of kidnapping. Anderson v. State, 125
S.W.3d 729, 731 (Tex. App.—Texarkana 2003, no pet.) (citing Schweinle v. State, 915 S.W.2d 17,
19 (Tex. Crim. App. 1996); Harner v. State, 997 S.W.2d 695, 702 (Tex. App.—Texarkana 1999, no
pet.)). A person commits the offense of unlawful restraint when he or she "intentionally or
knowingly restrains another person." Tex. Pen. Code Ann. § 20.02(a). Under our law, "restrain"
means 
to restrict a person's movements without consent, so as to interfere substantially with
the person's liberty, by moving the person from one place to another or by confining
the person. Restraint is "without consent" if it is accomplished by:
(A)force, intimidation, or deception; or
 (B)any means, including acquiescence of the victim, if:
 (i) the victim is a child who is less than 14 years of age or an incompetent 
person and the parent, guardian, or person or institution acting in loco parentis has
not acquiesced in the movement or confinement; or 
 (ii) the victim is a child who is 14 years of age or older and younger than
17 years of age, the victim is taken outside of the state and outside a 120-mile radius
from the victim's residence, and the parent, guardian, or person or institution acting
in loco parentis has not acquiesced in the movement.
Tex. Pen. Code Ann. § 20.01(1) (Vernon Supp. 2004–2005).
            Marsha Pavlak, A. P.'s mother, testified that, on the afternoon of November 16, 2003, she
was inside her house in Greenville, Hunt County, Texas. Pavlak's husband and two sons were in the
back yard of the house, picking up leaves. Pavlak went outside the house to look for A. P., but could
not find him. She then saw a neighbor across the street, Josefina Palomares, who was out on her
front porch screaming at Pavlak, "The baby!" Palomares was also pointing at a small white car that
was parked in a neighbor's driveway. Pavlak interpreted Palomares' words and gestures to mean that
someone in the car had taken Pavlak's youngest son. As Pavlak watched the white car drive away,
she used a cellular telephone to call the Greenville Police Department. 
            The white car returned a few minutes later. Pavlak attempted to stop the vehicle, but the car
kept going. The car eventually came to a stop at the end of an empty lot. Pavlak's husband ran to
the passenger side of the car, opened the door, and grabbed A. P. out of the car.


 The driver then
attempted to flee the scene. The police arrived soon thereafter and made contact with the driver,
whom they identified as Quick.



            When  questioned  by  Officer  Nathan  Baker,  Quick  reportedly  said  he  had  found  the
child (A. P.), who appeared lost. According to Baker's trial testimony, Quick said that he had
unsuccessfully attempted to locate A. P.'s parents and that, while taking the child to the juvenile
detention center, Quick became ill and was forced to turn the car around and return to his sister's
house, which was down the street from where Quick had picked up A. P. 
            Quick testified that the incident was a misunderstanding. According to Quick, as Quick
drove from his sister's house toward his home, A. P. suddenly ran out into the street. Quick turned
the car and quickly hit his brakes to avoid hitting A. P. Quick thought he had hit A. P. and got out
of the car to check on the child's welfare. A. P. was able to get up, and Quick "shooed" him into a
nearby yard. But as Quick started to leave, he noticed A. P. had again run out into the road. Quick
again exited his car, approached A. P., asked A. P. to point to his house, and then took A. P. by the
hand and led the child to that house. According to his testimony, Quick then banged on the front
windows, repeatedly rang the doorbell, and "screamed like a banshee," but received no response
from anyone inside or outside the house. Accordingly, Quick decided to take A. P. to the juvenile
center. 
            After Quick subsequently got sick and turned the car around to drive back to his sister's
house, he encountered a group of people in the road where he had found A. P.; the group appeared
to be looking for someone. One of the people flagged Quick down. Quick stopped his car, and A.
P.'s father came to the passenger side and got A. P. 
             Pavlak testified that she had not given Quick permission to take A. P. and that she had, in
fact, never seen Quick before November 16, 2003. She also testified that, before she began
searching for A. P.—as well as during the time A. P. had been missing—she had not heard her
doorbell ring.


 
            Viewing this evidence in the light most favorable to the prosecution, we believe the evidence
is legally sufficient to support the trial court's judgment that Quick restrained A. P.'s liberty—even
if accomplished by the two-year-old's acquiescence—by moving him from one place to another
without his effective consent. See Tex. Pen. Code Ann. §§ 20.01(1), 20.02(a). And even though
Quick's testimony, if believed by the fact-finder, might support the conclusion Quick was merely
acting as a good Samaritan rather than unlawfully restraining A. P., we can not say that the trial
court's finding of guilt is irrational, or that it is against the great weight of the evidence or manifestly
unjust. See Zuniga, 144 S.W.3d at 482, 484–85. Accordingly, we hold the evidence is factually
sufficient to support Quick's conviction for unlawful restraint.
Quick's Punishment Is Proper
            We next turn to whether any reversible error arose during the punishment trial. After finding
that Quick had been previously and finally convicted of several felony offenses, the trial court
assessed Quick's punishment at twenty years' imprisonment. The crime of unlawful restraint is a
state jail felony if the victim is younger than seventeen years' of age at the time of the crime. Tex.
Pen. Code Ann. § 20.02(c)(1) (Vernon 2003). 
If it is shown on the trial of a [nonaggravated] state jail felony . . . that the defendant
has previously been finally convicted of two [non-state-jail] felonies, and the second
previous felony conviction is for an offense that occurred subsequent to the first
previous conviction having become final, on conviction the defendant shall be
punished for a second-degree felony.

Tex. Pen. Code Ann. § 12.42(a)(2) (Vernon Supp. 2004–2005). The punishment range for a
second-degree felony is imprisonment for not less than two years nor more than twenty years. Tex.
Pen. Code Ann. § 12.33 (Vernon 2003).
            The record before us indicates that, on August 7, 1980, Quick pled guilty to the crime of
burglary and was sentenced to five years' confinement. Eight days later, Quick's probation for the
offense of burglary of a building


 was revoked, and the trial court assessed Quick's punishment at
eight years' confinement. On July 12, 1984, Quick was convicted of unauthorized use of a motor
vehicle


 and sentenced to five years' confinement for an offense that occurred December 21, 1983. 
And, finally, on June 15, 1987, Quick was convicted of robbery and sentenced to twenty-five years'
imprisonment for an offense committed November 13, 1986. During the State's cross-examination
of Quick during the guilt/innocence phase of this case, Quick admitted he had been previously
convicted in those cases. Thus, the evidence before the trial court showed Quick was tried and
convicted for the 1986 robbery after his convictions for the other three felony crimes had become
final. The trial court's assessment of twenty years' imprisonment was, therefore, within the range of
punishment provided for by law.
 
 
 
 
 
 
Conclusion
            Because our independent review of the record reveals no reversible error at the 
guilt/innocence phase of trial or during the trial on punishment, we affirm the trial court's judgment.
 

                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice
 
Date Submitted:          February 17, 2005
Date Decided:             March 17, 2005

Do Not Publish